AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

**FILED**

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of

*(Briefly describe the property to be searched*
*or identify the person by name and address)*

TWO BLACK IPHONES, ONE GRAY LG CELL PHONE,
ONE DARK BLUE IPHONE

)
)
)
)
)
)

Case No.  MR 24-1532

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference).

located in the _____ District of     New Mexico     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband. fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use. or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841(a)(1),(b)(1)(A) | Possession with intent to distribute 400 grams and more of fentanyl. |

The application is based on these facts:

See the attached affidavit of HSI Special Agent Victor Avila, which is incorporated by reference and has been reviewed and approved by AUSA Elaine Ramirez.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Victor Avila, HSI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephonically sworn and electronically signed__ *(specify reliable electronic means)*.

Date:  8/19/2024

*Judge's signature*

City and state:  Albuquerque, New Mexico

Hon. Paul Briones, U.S. Magistrate Judge

*Printed name and title*

### ATTACHMENT A

### Items to be Searched

The property to be searched are one black iPhone bearing an unknown IMEI, one gray LG cell phone bearing IMEI 356284103729703, One dark blue iPhone bearing IMEI 351829688364998, and one black iPhone bearing IMEI 359051887211688, hereinafter referred to as the "**Subject Devices**." The **Subject Devices** are located at the HSI Albuquerque field office located at 5441 Watson Drive SE, Albuquerque, NM.

This warrant authorizes the forensic examination of the **Subject Devices** for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

**Items to be Seized**

1.      All evidence on the **Subject Devices** described in Attachment A that relates to violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), that being possession with intent to distribute 400 grams and more of mixture and substance containing a detectable amount of fentanyl including:

     i.     Pictures and videos of controlled substances, including fentanyl and/or other narcotics, as well as pictures and videos of supplies, instruments, and paraphernalia used for packaging processing, diluting, weighing, and distributing controlled substances;

    ii.     Lists of customers and related identifying information;

   iii.     Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    iv.     Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

     v.     Any information recording Matthew Valenzuela or Shantel Tavasci's schedule or travel;

    vi.     All bank records, checks, credit card bills, account information, and other financial records;

   vii.     Pictures and videos of firearms and ammunition;

  viii.     Books, records, receipts, notes, ledgers, records and documents related to the distribution of controlled substances, and the sale or purchase of firearms and ammunition;

ix.    Pictures and videos of proceeds of drug trafficking, or the sale of firearms, including currency, jewelry, vehicles, and other assets or financial records;

x.     Photographs, videos, and digital images depicting Matthew Valenzuela, and persons yet to be identified, with controlled substances, firearms, or ammunition; and

xi.    Communications between Matthew Valenzuela and persons yet to be identified discussing drugs, drug trafficking, firearms, or ammunition, to include communications from email accounts, text messages, voice messages, picture messages, messaging applications, and any other web or cellular based communications platforms.

2.    Evidence of user attribution showing who used or owned the **Subject Devices** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE BLACK IPHONE BEARING UNKNOWN IMEI, ONE GRAY LG CELL PHONE BEARING IMEI 356284103729703, ONE DARK BLUE IPHONE BEARING IMEI 351829688364998, AND ONE BLACK IPHONE BEARING IMEI 359051887211688 | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Victor Avila, Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—one electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.  For the reasons stated herein, I believe there is probable cause to conclude that the electronic devices at issue contain records or information that will be evidence of or relating to violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), that being possession with intent to distribute 400 grams and more of mixture and substance containing a detectable amount of fentanyl.

2.      I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States

who is empowered to conduct investigations of, and to make arrest for, the offenses enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code and other related offenses.

3.     I am a Special Agent ("SA") with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), in Albuquerque, New Mexico, and have been employed as such since April of 2018.  Prior to my employment with the Department of Homeland Security, I was a Border Patrol Agent with the United States Customs and Border Protection from July 2012 until April 2018.

4.     I successfully completed eleven weeks of Criminal Investigator Training at the Federal Law Enforcement Training Center in Glynco, Georgia (FLETC). In addition, I have completed seventeen weeks of Border Patrol Agent Training with United States Border Patrol Academy at FLETC (Artesia, NM). I have a bachelor's degree in social science from The Evergreen State College and a Master of Criminal Justice Administration and Security Degree from University of Phoenix.

5.     I have received extensive training and practical experience pertaining to federal criminal procedure, federal criminal statutes, United States immigration and nationality law, United States customs laws and regulations, and other federal and state laws, including but not limited to alien smuggling, human trafficking, fraudulent document manufacture and sales, the importation and distribution of controlled substances, firearms, commercial fraud, counter-proliferation investigations, and conspiracy.

6.     I have also acquired knowledge and information about such offenses, and the various means and methods by which they are furthered, from numerous sources, including formal and informal training from other law enforcement officers, investigators, and Special Agents; interviews of informants and arrestees; and interviews of other knowledgeable individuals.

2

7.    Through my training and experience, I have learned that:

a.  Drug traffickers often store names, addresses, telephone numbers, email addresses, or other pertinent codes and or contact information for their current or past illegal drug source(s) of supply, customers, or criminal associates in the electronic memory of their wireless telephones, tablets, digital cameras, portable media players, and personal digital assistants ("PDAs").

b.  Drug traffickers often store photographs of drugs, vehicles, locations, or drug associates in the electronic memory of their wireless telephones, tablets, digital cameras, portable media players, and PDAs.

c.  Drug traffickers often communicate with their illegal drug source(s) of supply, customers, or criminal associates through text message, wireless telephone application, and/or email from their wireless telephones, tablets, portable media players, and PDAs. Accordingly, pertinent communications are often stored in the electronic memory of wireless telephones, tablets, portable media players, and PDAs.

d.  Drug traffickers must maintain and have quick access to large amounts of United States currency or other liquid assets in order to maintain and finance their ongoing drug business. As such, they often store bank account information, drug ledgers, or lists of where assets are stored in the electronic memory of wireless telephones, tablets, digital cameras, portable media players, and PDAs.

e.  Drug traffickers often make use of multiple wireless telephones and other electronic devices, such as tablets, in an effort to thwart law enforcement detection. They

3

believe that spreading communications over multiple devices will make it more difficult for law enforcement to intercept their communications.

f. Drug traffickers, like many other people in today's digital society, make use of computers and tablets to conduct their business. Like other people, drug traffickers need ready access to their important records that are stored electronically. These records can include ledgers of money paid and owed, customer lists, names and contact information of co-conspirators and associates, and photographs and videos displaying drugs in the trafficker's possession. Many people in today's society, including drug traffickers, make use of portable computer drives, commonly referred to as USB drives, flash drives, or thumb drives, to access important records when using a computer.

g. Those engaged in the transportation of drugs will often be given an address where the drugs are to be picked up and where the drugs are to be delivered. In many instances, the drug transporter is not familiar with these addresses and is being paid to act as a courier between two locations. In these circumstances, I believe that couriers use the same methods that any other person would use to locate an unfamiliar address. These methods would include, but are not limited to, using mapping programs contained within wireless telephones or tablets, and/or programming the address into GPS navigation devices.

h. It is important for agents to not only seize evidence of the crimes at issue, but to also seize any evidence that could demonstrate to whom the evidence can be attributed. I know from my training and experience that electronic devices can be used by multiple individuals. Oftentimes, friends, family members, co-

conspirators, and/or associates will all make use of the same electronic device. For this reason, it is necessary to seize any information since the inception of the device's use that could demonstrate who has possessed the device, who has used the device, and/or who has created the records, information, or evidence that could establish violations of the statutes listed herein.

8.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

9.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

10.      The property to be searched consists of three cellular telephones, as described in Attachment A and B (hereafter referred to as the "Devices") and is identified as follows:

a.   One black iPhone cell with an unknown IMEI (seized 07/22/2024).

b.   One gray LG cell bearing IMEI 356284103729703 (seized 07/22/2024).

c.   One dark blue iPhone cell bearing IMEI 351829688364998 (seized 07/22/2024).

d.   One black iPhone cell bearing IMEI 359051887211688 (seized 08/12/2024).

11.      The devices above will be referred to as the **Subject Devices**. The **Subject Devices** are located at the HSI Albuquerque field office located at 5441 Watson Drive SE, Albuquerque, NM.

12.      The applied-for warrant would authorize the forensic examination of the **Subject Devices** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

13.     VALENZUELA and TAVASCI are currently part of an ongoing HSI investigation and suspected of violating 21 U.S.C. § 841, that being Distribution and Possession with Intent to Distribute Fentanyl.

14.     On May 9, 2024, HSI Albuquerque executed a federal search warrant on VALENZUELA's Albuquerque residence. During this search, law enforcement located 4.6 grams of fentanyl, a 9 mm M&P Shield handgun, and bulk U.S currency. Following a field interview with VALENZUELA, he consented to the search of a second property he was occupying. VALENZUELA stated that it was at this residence where an associate of his would hide fentanyl. No fentanyl was located at this second property.

15.     On July 22, 2024, Homeland Security Investigations (HSI) Albuquerque Task Force Officer (TFO) New Mexico State Police (NMSP) Officer J. Rodriguez conducted a traffic stop on a gray Toyota Camry displaying New Mexico license plate BLBA85 on Interstate 40 eastbound, mile marker 104 in Grants, New Mexico.  Roadside interviews were conducted with the driver of the vehicle, identified as Shantel TAVASCI, and the passenger, identified as Matthew VALENZUELA. It was ascertained that TAVASCI and VALENZUELA traveled to Arizona and were returning to Albuquerque. Following the roadside interviews a canine sniff of the vehicle was conducted by Sandoval County Sheriff Office Canine Deputy A. Noriega. The canine sniff of the vehicle resulted in a positive alert for the presence of narcotics. A subsequent hand search of vehicle reveled 8.6 kilograms of fentanyl pills, US currency (total $80,016.00), and a 9 mm Q5 Match SF Walther handgun.

16.     VALENZUELA and TAVASCI were read their Miranda rights, were interviewed at the HSI Albuquerque office and subsequently released from detention. VALENZUELA's two

cell phones and TAVASCI's one cell phone were seized in anticipation of applying for a search warrant to access them.

17.     Following the July 22, 2024, traffic stop, the New Mexico Department of Corrections Probation/Parole indicated that VALENZUELA's illicit activity resulted in a decision to violate his probation. On August 12, 2024, HSI special agents, a NMSP/TFO, and Probation/Parole apprehended VALENZUELA at his Albuquerque apartment. A search of VALENZUELA's apartment yielded 14.47 grams of fentanyl, 9.19 grams of psychedelic mushrooms, a black iPhone cell phone, and bulk U.S currency ($74,750.00). Probation/Parole arrested VALENZUELA for his probation violations and transported him for processing.

18.     Law enforcement records conducted on VALENZUELA revealed he has a criminal history that includes charges of Possession of a Controlled Substance and Trafficking of a Controlled Substances. Additionally, VALENZUELA has been encountered twice with firearms and fentanyl: one at his apartment in May 2024 and the other during the traffic stop in July 2024.

19.     Based on my training and experience, I know that people who transport controlled substances often collect the controlled substances at locations they are unfamiliar with and must often deliver them to other locations with which they are not familiar. I know that these individuals are often given strict timetables and schedules for their trips. I know that they will often rely on Global Positioning Systems ("GPS") to guide them to the locations where they are to pick up the controlled substances and provide them with efficient routes in order to reach their final destinations on schedule. I know that smart devices such as the **Subject Devices** can be used with a variety of GPS and navigation programs, which provide users with directions to and from specific locations. Therefore, I believe the **Subject Devices** may have been used by VALENZUELA to

7

find the location where he received the controlled substances and the location to which he was supposed to deliver them and/or the other people involved.

20.     Based on my training and experience, I know that individuals involved in trafficking controlled substances often use their wireless phones and tablets to communicate with each other regarding their crimes. These individuals can use their wireless telephones and tablets to communicate through telephone calls, text messages, e-mails, and through mobile applications such as Facebook Messenger, WhatsApp, Kik Messenger, Instagram, Snapchat, and others. I know that these individuals often document their co-conspirators as contacts in their wireless telephone's contact list or phonebook and document activities such as meetings, deliveries, and payments in their phone or tablet's calendar or notepad application. I know that these individuals often use their wireless phones or tablets to access their bank accounts and interact with funds that were derived from their criminal activities as well as to transfer those funds using applications such as Zelle, Quickpay, PayPal, Venmo, and others. I know that individuals will often use the GPS capabilities of their wireless telephones or tablets to guide them to locations at which they engage in their criminal activities. For these reasons, I believe the **Subject Devices** likely contains evidence of VALENZUELA's drug trafficking activities.

21.     Based on the above-mentioned details, I believe the **Subject Devices** likely contains information relating to violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), that being possession with intent to distribute 400 grams and more of mixture and substance containing a detectable amount of fentanyl. In addition to the narcotics, I believe the Subject Devices likely contain information relating to violations of 18 U.S.C § 924 (c) which involve the use or carrying of a firearm during and in relation to a crime of violence or drug trafficking crime, or the possession of a firearm in furtherance of those crimes.

8

22.    The information may include details on how and where VALENZUELA obtained the seized illegal drugs, where the seized drugs were destined, where additional evidence may be located, who assisted VALENZUELA in obtaining the seized drugs, who supplied the drugs, and whether there was an intended recipient of the drugs.  This information could include, but is not limited to:

a.  Lists of customers and related identifying information;

b.  Types, amounts, and prices of drugs trafficked, as wells as dates, places, and amounts of specific transactions;

c.  Photographs or videos of the drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds;

d.  Photographs, videos, and/or messages involving or about firearms and ammunition;

e.  Messages, notes, correspondence, and/or communications between drug trafficking sources, customers, associates, and/or co-conspirators;

f.  Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

g.  Any information recording VALENZUELA's schedule or travel; and

h.  All bank records, checks, credit card bills, account information, and other financial records.

23.    The **Subject Devices** are currently in the lawful possession of HSI at 5441 Watson Drive SE, Albuquerque, NM.  As described above, **Subject Devices** came into the possession of HSI subsequent to the arrest of VALENZUELA on July 22, 2024 (3 devices), and August 12, 2024 (1 device). HSI took possession of the **Subject Devices** on July 22, 2024, and August 12, 2024, after VALENZUELA was encountered in two separate incidents. In my training and experience, I

9

know that the **Subject Devices** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Subject Devices** first came into the possession of HSI.

## TECHNICAL TERMS

24.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.   These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.   Images can usually

be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly

available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for

example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by devices that access the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every device attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that device may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some devices have static—that is, long-term—IP addresses, while other devices, particularly mobile devices, have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

25. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications, available online (for the **Subject Devices**), I know that the **Subject Devices** have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA, and/or tablet, and to access the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

13

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on such devices.  This information can sometimes be recovered with forensics tools.

27.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Devices** were used, the purpose of that use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on **the Subject Devices** because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review

14

team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Devices** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

29.  *Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30.  I submit that this affidavit supports probable cause for search warrants authorizing the examination of the **Subject Devices** described in Attachment A to seek the items described in Attachment B.

31.    AUSA Elaine Ramirez reviewed and approved this affidavit.

Respectfully submitted,

_____

Victor Avila
Special Agent
Homeland Security Investigations

Telephonically sworn and electronically signed
on August 19, 2024:

_____

Hon. Paul Briones
United States Magistrate Judge

16